UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| JESSIE COOLEY, individually, <br><br> Plaintiff, <br><br> vs. <br><br> SOUTHWEST AIRLINES COMPANY, <br><br> Defendant. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

1. This action arises out of the negligence of Southwest Airlines Company ("Southwest") on its flight number 1649 with scheduled service from Bradley International Airport, Connecticut to Tampa, Florida that departed on February 1, 2019 onboard a Boeing 737 aircraft with United States Registration Number N211WN ("Flight 1649").

2. Southwest Flight 1649 never made it to Tampa; the aircraft experienced a severe in-flight emergency moments after takeoff that forced its immediate return to Bradley International Airport.

3. The emergency experienced by Flight 1649 was a severe pressurization problem that left Plaintiff, Jessie Cooley, bleeding from the ears while she was onboard; Ms. Cooley was removed from the aircraft with the assistance of multiple emergency medical personnel.

4. Compounding the emergency with the broken aircraft, Southwest's pilots executed an inappropriate and dangerous response which caused a rapid buildup of the atmospheric pressure experienced by the passengers.

5. In general medical terms, a "barotrauma" is defined as any lesion caused or provoked by a change in pressure differential between various anatomical parts of the organ involved.

6. Onboard Flight 1649 Ms. Cooley suffered an acute barotrauma to her inner ears caused by significant pressure changes.

7. After she left the aircraft with the assistance of emergency medical personnel, Ms. Cooley was immediately placed on a stretcher and taken to an ambulance outside the airport. She was then transported to the Baystate Medical Center Emergency Department in Springfield, Massachusetts for treatment.

8. Due to Southwest's negligence and the barotrauma that was inflicted onboard Southwest 1649, Ms. Cooley now suffers from permanent partial hearing loss and other physical, physiological, and emotional injuries caused by the incident.

9. In the months before Flight 1649 experienced its severe pressurization problem, many of Southwests' aging fleet of 737 aircraft experienced pressurization problems and other aircraft emergencies caused by pressurization.

10. Some of the Southwest 737 aircraft that experienced pressurization emergencies before Flight 1649 include Southwest Flight 957 from Chicago to Newark which had to make an emergency landing in Cleveland on May 2, 2018; Southwest Flight 861 from Denver to Dallas on May 13, 2018 which had to make an emergency descent to Dallas; Southwest Flight 5913 from Las Vegas to Philadelphia which had to make an emergency landing in Indianapolis on May 19, 2018; Southwest Flight 718 from Washington, DC to Kansas City experienced a pilot's windshield crack on descent to Kansas City on November 29, 2018.

11. Given the documented and repeated pressurization problems in Southwest's fleet before Flight 1649, it should have provided increased inspections and preventative maintenance on its aircrafts' pressurization systems but it did not.

12. Given the documented and repeated pressurization problems in Southwest's fleet before Flight 1649, it should have provided specialized training for its pilots to deal with

pressurization emergencies to avoid dangerous rapid buildup of the atmospheric pressure experienced by the passengers but it did not.

13. Shortly before Flight 1649 experienced its severe pressurization problem, on October 23, 2018, the same aircraft, N211WN, was struck by lightning near Manchester, New Hampshire and the damage to the airframe caused by the lighting strike was negligently not properly corrected by Southwest, which led to the pressurization emergency onboard Flight 1649.

14. This accident and Ms. Cooley's severe and permanent physical injuries and her emotional injuries and distress were foreseeable and should have been prevented by Southwest.

## THE PARTIES

15. Plaintiff Jessie Cooley is an individual, a citizen of the Commonwealth of Massachusetts, the County of Hampshire and the City of Easthampton.

16. Defendant Southwest Airlines Company ("Southwest") is a corporation organized and existing under the laws of the State of Texas with a principal place of business located in Dallas, Texas.

17. Southwest is registered to do business in the Commonwealth of Massachusetts, it has a registered agent here and it has been assigned Massachusetts Entity ID Number 741563240 by the Secretary of the Commonwealth.

## JURISDICTION AND VENUE

18. This Honorable Court has subject matter jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Massachusetts, Defendant is a citizen of Texas and the amount in controversy exceeds $75,000.00.

19. This Honorable Court has specific personal jurisdiction over Southwest in Massachusetts by virtue of Southwest's contacts directed at this Commonwealth that are directly related to Ms. Cooley and Flight 1649.

20. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or admissions giving rise to the action occurred in the District of Massachusetts.

21. Ms. Cooley booked her round-trip flight on Southwest Flight 1649 in Massachusetts.

22. Ms. Cooley purchased her ticket for Flight 1649 and entered into a contract of carriage with Southwest in Massachusetts.

23. A true and correct copy of Ms. Cooley's boarding pass for Flight 1649, which memorialized the contract of carriage, is attached at Exhibit A to this Complaint.

24. Ms. Cooley's trip itinerary for Flight 1649 began in Massachusetts on the day of the flight, February 1, 2019.

25. Ms. Cooley's personal injuries sustained as a result of Southwest Flight 1649 have required medical treatment in Massachusetts.

26. Ms. Cooley's personal injuries sustained as a result of Southwest Flight 1649 require ongoing treatment in Massachusetts.

27. Ms. Cooley's personal injuries sustained as a result of Southwest Flight 1649 will require future medical treatment in Massachusetts.

**BACKGROUND OF SOUTHWEST AND THE
<u>MINUMUM STANDARDS THAT APPLY TO SOUTHWEST</u>**

28. Southwest holds itself out to the public as engaged in the business of transporting people from place to place by air for compensation and hire.

29. Southwest offers its transportation services to the general public.

30. Southwest maintains exclusive control over the hiring, training, and continued employment of the pilots, flight crew and maintenance personnel of Southwest Flight 1649.

31. Southwest maintains exclusive control over its aircraft including N211WN, which was the aircraft used for Flight 1649.

32. Southwest acts as a common carrier for all of its flights and for Flight 1649.

33. The United States Federal Aviation Administration (the "FAA") granted Southwest an air carrier certificate pursuant to 49 U.S.C. § 44702(b)(1)(A) and 14 C.F.R. Part 119.

34. Southwest is required at all times to maintain an insurance policy sufficient to pay "for bodily injury to, or death of, an individual. . . resulting from the operation or maintenance of the aircraft under [its] certificate" pursuant to 49 U.S.C. § 41112(a).

35. Southwest's dispatchers, pilots, crew members, maintenance team, and management were required to operate Flight 1649 and maintain its aircraft pursuant to the "Operating Requirements" contained in 14 C.F.R. Part 121.

36. In addition, Southwest's maintenance personnel must comply with 14 C.F.R. Part 43; Southwest's pilots must comply with 14 C.F.R. Part 61 and Part 91.

37. The regulations contained in Title 14 of the C.F.R. are **"minimum standards"** for operation and maintenance pursuant to 49 U.S.C. § 44701.

38. Southwest may, and is encouraged by the FAA to, adopt higher standards than those espoused in the aviation regulations.

39. That is because, for Flight 1649 and all of its flights, Southwest is required "to provide service with the highest possible degree of safety in the public interest" pursuant to 49 U.S.C. § 44702(b)(1)(A).

40. Southwest acted as a common carrier with the duty to operate Flight 1649 with the utmost duty of care in accordance with 49 U.S.C. § 44702(b)(1)(A).

41. Southwest was required to prepare and keep current various manuals for the use and guidance of flight operations, ground operations, maintenance operations, and management personnel pursuant to 14 C.F.R. §§ 121.133, 121.135, 121.369 (the "Manuals").

42. The minimum standards set forth in Southwest's Manuals become the standards to which Southwest is required to operate and maintain its aircraft under the FAA's regulations and are part of the standard of care along with aviation industry standards, best practices and safety guidance.

43. Both federal law and Southwest's Manuals absolutely required its aircraft to be airworthy and in a condition for safe flight at all relevant times pursuant to 49 U.S.C. §§ 40101(a)(1) and 44702(b)(1)(A) and 14 C.F.R. Part 121.

### BACKGROUND OF THE MINIMUM STANDARDS REQUIRED FOR PILOT KNOWLEDGE, EXPERIENCE, PERFORMANCE, JUDGMENT, TRAINING AND SAFETY

44. Congress requires the FAA and all aviation participants, including Southwest, to maintain "safety as the highest priority in air commerce" as a public necessity pursuant to 49 U.S.C. § 40101(a)(1).

45. Congress requires all U.S. air carrier certificate holders, including Southwest, "to provide service with the highest possible degree of safety in the public interest" pursuant to 49 U.S.C. § 44702(b)(1)(A).

46. Congress requires the FAA to prescribe "regulations, **standards** and procedures" and issue orders to aviation entities, including to Southwest, to ensure the highest level of aviation safety pursuant to 49 U.S.C. § 40113(a) (emphasis added).

47. One of the minimum standards that the FAA established pursuant to 49 U.S.C. § 40113(a) is the "Airline Transport Pilot and Aircraft Type Rating Practical Test Standards for Airplane" which is published under document number FAA-S-8081-5F (the "ATP PTS").

48. The ATP PTS is a minimum standard that pilots are required to meet or exceed that is published by the FAA and available to the general public at *https://www.faa.gov/training_testing/testing/test_standards/media/atp_pts.pdf*.

49. The FAA required the pilots of Southwest Flight 1649 to hold Airline Transport Pilot Certificates pursuant to 14 C.F.R. §§ 61.151 *et seq.* and 14 C.F.R. Part 121.

50. The FAA required the pilots of Southwest Flight 1649 to meet and adhere to the minimum standards set forth in the ATP PTS pursuant to 14 C.F.R. Part 61 and Part 121.

51. The FAA set forth minimum standards for pilot knowledge, experience, performance and judgment pursuant to 14 C.F.R. Part 61 and Part 121 Subpart M.

52. The FAA set forth minimum standards for Southwest's pilot training program with an emphasis on emergency preparedness including for pressurization emergencies pursuant to 14 C.F.R. Part 121 Subpart N.

53. The FAA set forth minimum standards that required Southwest's training program that is specific to each airplane type, model and configuration pursuant to 14 C.F.R. § 121.417(a).

54. The FAA required the pilots of Southwest's aircraft to meet the minimum standards for knowledge, experience, performance, judgment, training, and safety set forth in Southwest's Manuals pursuant to 14 C.F.R. §§ 121.133, 121.135.

**BACKGROUND OF THE MINIMUM STANDARDS REQUIRED FOR AIRCRAFT MAINTENANCE**

55. Southwest was "primarily responsible" for the airworthiness of its aircraft and all of their component parts pursuant to 14 C.F.R. § 121.363

56. Southwest was permitted to arrange for others to perform maintenance on its aircraft, however, this did not and does not relieve Southwest from **primary responsibility** for the maintenance and safe operating condition of its aircraft pursuant to 14 C.F.R. § 121.363.

57. At a minimum, Southwest was required to ensure that any others performing maintenance on its aircraft were competent and equipped with adequate facilities pursuant to 14 C.F.R. § 121.367.

58. At a minimum, Southwest was required to ensure that anyone performing inspections on its aircraft were certified, competent and disassociated from the work which they were inspecting pursuant to 14 C.F.R. § 121.371.

59. Southwest's Manuals were required to include all methods, procedures, standards, limitations, instructions, and designations for performing maintenance, preventative maintenance, and/or alterations on its aircraft pursuant to 14 C.F.R. § 121.369.

60. Southwest was required to establish and maintain a system for continuously assessing, analyzing and surveilling the performance and effectiveness of its maintenance, preventative maintenance, and inspection programs pursuant to 14 C.F.R. § 121.373.

61. At a minimum, Southwest was required to perform maintenance, preventative maintenance and inspections on its aircraft in compliance with 14 C.F.R. Part 43 and Part 121.

62. The FAA publishes Advisory Circulars and provides them to air carriers like Southwest to explain the aviation regulations and propose one or more means of compliance with the regulations.

63. Southwest was encouraged by the FAA through its Advisory Circulars to adopt standards higher than the minimum standards espoused in the aviation regulations.

64. Southwest was encouraged by the FAA to adopt and maintain "industry best practices" for the maintenance of its aircraft by FAA Advisory Circular No. 120-16F, dated November 15, 2012.

## COUNT ONE
## NEGLIGENCE
### (PLAINTIFF V. SOUTHWEST)

65. All preceding and subsequent paragraphs of this Complaint are hereby incorporated as if set forth fully herein.

66. At all times material, Southwest had a duty to operate its aircraft, including Flight 1649, with the highest standard of care.

67. At all times material, Southwest had a duty to operate its aircraft, including Flight 1649, in accordance with all applicable regulations.

68. At all times material, Southwest had a duty to operate its aircraft, including Flight 1649, in accordance with all applicable FAA standards including the ATP PTS. (Exhibit B)

69. At all times material, Southwest had a duty to operate its aircraft, including Flight 1649, in accordance with all applicable FAA references and guidance including Advisory Circulars.

70. At all times material, Southwest had a duty to operate and maintain its aircraft, including Flight 1649, in accordance with its Manuals.

71. At all times material, Southwest had duties to operate and maintain its aircraft, including Flight 1649, in accordance with aviation industry standards and best practices laws, regulations, and guidance.

72. At all times material, Southwest owed legal duties to Ms. Cooley by virtue of the contract of carriage, Southwest's position as a common carrier, duties imposed by the federal aviation regulations' minimum standards, and best practices in the aviation industry.

73. At all times material, Southwest and its employees breached their duties and were negligent, grossly negligent, careless, and/or reckless in that:

    a.    they failed to operate Southwest Flight 1649 with the highest standard of care as required by 49 U.S.C. § 44702(b)(1)(A);

    b.    they failed to operate Southwest Flight 1649 with "the highest possible degree of safety in the public interest" as required by 49 U.S.C. § 44071(b)(1)(A);

    c.    they failed to operate Southwest Flight 1649 in accordance with the minimum standards set forth by the federal aviation regulations contained in 14 C.F.R. Parts 61, 91, and 121.

    d.    they failed to operate Southwest Flight 1649 in accordance with the minimum standards set forth by the FAA including the ATP PTS as required by 14 C.F.R. Parts 61and 121;

    e.    they failed to operate Southwest Flight 1649 with "good judgment commensurate with a high level of safety" as required by 14 C.F.R. Part 121 Appendix F and the ATP PTS.

    f.    the pilots of Southwest Flight 1649 did not possess adequate aeronautical knowledge in violation of 14 C.F.R. § 61.155 and the ATP PTS;

    g.    the pilots of Southwest Flight 1649 did not exercise proper aeronautical decision making and judgment in violation of 14 C.F.R. § 61.155(c)(12), the ATP PTS and 49 U.S.C. § 44702(b)(1)(A);

    h.    they operated Southwest Flight 1649 negligently, carelessly and/or recklessly in violation of 49 U.S.C. § 44702(b)(1)(A);

    i.    during their operation of Flight 1649 their pilots did not adhere to the minimum standards set forth in the ATP PTS in violation of 14 C.F.R. Parts 61, 121; and

49 U.S.C. §§ 44702(b)(1)(A), 46101(a)(2) and 44709;

      j.      during their operation of Flight 1649 the pilots did not adhere the minimum standards, procedures and protocols set forth in Southwest's Manuals in violation of 14 C.F.R. §§ 121.133 and 121.135;

      k.      they operated Flight 1649 in violation of aviation industry standards and prudent piloting practices;

      l.      they operated Flight 1649 in violation of the highest duty of care required by a common carrier;

      m.      they operated Flight 1649 in violation of the guidance set forth in FAA advisory circulars and other FAA publications that comprise the standard of care for airlines such as Southwest;

      n.      they operated Flight 1649 without regard to the safety of the passengers including Ms. Cooley.

      o.      before Flight 1649 their maintenance of N211WN violated the minimum standards set forth in 14 C.F.R. Part 43 and Part 121;

      p.      before Flight 1649 their maintenance of N211WN was inadequate and violated industry best practices and the high standard of care required of common carriers;

      q.      before Flight 1649 their preventative maintenance of N211WN violated the minimum standards set forth in 14 C.F.R. Part 43 and Part 121;

      r.      before Flight 1649 their preventative maintenance of N211WN was inadequate and violated industry best practices and the high standard of care required of common carriers;

      s.      before Flight 1649 their inspections of N211WN violated the minimum

standards set forth in 14 C.F.R. Part 43 and Part 121;

  t. before Flight 1649 their inspections of N211WN were inadequate and violated industry best practices and the high standard of care required of common carriers;

  u. before Flight 1649 they failed to adequately perform a post-lightning strike inspection of N211WN;

  v. before Flight 1649 their maintenance of N211WN violated the procedures, minimum standards and protocols set forth in the Southwest Manuals in violation of 14 C.F.R. §§ 121.133, 121.135 and 121.369;

  w. before Flight 1649 their maintenance of N211WN violated the guidance set forth in FAA advisory circulars and other FAA publications that comprise the standard of care for airlines such as Southwest;

  x. before Flight 1649 their maintenance of N211WN violated the highest duty of care required by a common carrier;

  y. before Flight 1649 they failed to perform adequate analysis and surveillance of the performance and effectiveness of their maintenance, preventative maintenance and inspection programs despite the documented and repeated pressurization problems and previous barotrauma injuries on Southwest flights in the months prior to this incident in violation of 14 C.F.R. § 121.373.

  z. before Flight 1649 they did not provide specialized maintenance, preventative maintenance, and/or inspection procedures to prevent pressurization system problems despite the documented and repeated pressurization problems and previous barotrauma injuries on Southwest flights in the months prior to this incident;

  aa. they maintained N211WN without regard to the safety of the passengers

including Ms. Cooley;

bb. N211WN was not in a condition for safe flight on the day of Flight 1649 in violation of 14 C.F.R. § 121.363;

cc. N211WN was not in airworthy condition on the day of Flight 1649 in violation of 14 C.F.R. § 121.363;

dd. before Flight 1649 they did not train pilots to properly deal with emergencies in general and pressurization emergencies in particular in violation of 14 C.F.R. Part 121 Subpart M;

ee. before Flight 1649 their pilot training department violated the procedures, minimum standards and protocols set forth in the Southwest Manuals in violation of 14 C.F.R. §§ 121.133, 121.135;

ff. before Flight 1649 their pilot training was inadequate and violated industry best practices and the high standard of care required of common carriers;

gg. before Flight 1649 they did not provide specialized pilot training to handle pressurization emergencies despite the documented and repeated pressurization problems and previous barotrauma injuries on Southwest 737 aircraft in the months prior to this incident in violation of 14 C.F.R. § 121.417(a).

hh. before Flight 1649 they did not provide specialized pilot training to handle pressurization emergencies despite the documented and repeated pressurization problems and previous barotrauma injuries on Southwest 737 aircraft in the months prior to this incident in violation of industry best practices and the high standard of care required by common carriers such as Southwest;

ii. they trained their pilots without adequate regard to the safety of the passengers including Ms. Cooley.

74. As a direct and/or proximate result of the breaches of duties of Southwest and its employees, Southwest Flight 1649 experienced a pressurization emergency which was not properly handled by the pilots.

75. As a direct and/or proximate result of the breaches of duties of Southwest and its employees, Plaintiff has suffered physical injuries and past damages including but not limited to barotrauma, bleeding from her ears, permanent partial deafness, and constant tinnitus or ringing in her ears.

76. As a direct and/or proximate result of the breaches of duties of Southwest and its employees, Plaintiff will suffer future damages.

**WHEREFORE**, Plaintiff demands judgment against Southwest for damages in a sum greater than $75,000.00, plus interest, costs and disbursements, attorneys' fees, delay damages, and any other relief which the Court deems just and proper.

## COUNT TWO
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*(PLAINTIFF V. SOUTHWEST)*

77. All preceding and subsequent paragraphs of this Complaint are hereby incorporated as if set forth fully herein.

78. At all times material Southwest was negligent as set forth in Count One, above.

79. At all times material Ms. Cooley suffered and continues to suffer from emotional distress including but not limited to post-traumatic stress disorder and ongoing fear of flying.

80. At all times material there was and is a causal connection between Southwest's negligence and Plaintiff's emotional injury and damages because without the pressurization emergency onboard Flight 1649 and the pilots' improper handling of that emergency, Ms. Cooley would not have suffered physical injuries and attendant emotional distress including but not limited to post-traumatic stress disorder and ongoing fear of flying.

81. Ms. Cooley has suffered physical harm manifested by objective symptomatology including but not limited to barotrauma, bleeding from her ears, permanent partial deafness, constant tinnitus or ringing in her ears, post-traumatic stress, fear of flying, insomnia, impaired concentration, gastrointestinal distress, motion sickness, dizziness, vertigo, feelings of anxiety, and objective symptoms of post-traumatic stress disorder.

82. As a direct and/or proximate result of Southwest's negligence, a reasonable person would have suffered emotional distress under the circumstances of Flight 1649 and following.

**WHEREFORE**, Plaintiff demands judgment against Southwest for damages in a sum greater than $75,000.00, plus interest, costs and disbursements, attorneys' fees, delay damages, and any other relief which the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to the Seventh Amendment to the United States Constitution, Part One Article Fifteen of the Massachusetts Constitution and Federal Rule of Civil Procedure Rule 38 Plaintiff demands a jury trial on all issues.

Dated: January 4, 2020

                                                    Respectfully submitted,

                                                    LAW OFFICES OF TERRENCE A. LOW
                                                       AND ANTHONY J. CANATA

                                                  By:  */s/ Terrence A. Low*
                                                        Terrence A. Low, Esq.
                                                        BBO # 544163
                                                        9 1/2 Market Street
                                                        Northampton, MA 01060
                                                        (413) 727-8110
                                                        *terry@terryalow.com*